UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| BILLY SANDEFUR, ) | | |
| Plaintiff, ) | | |
| ) | | |
| vs. ) | | 3:04-cv-122-RLY-WGH |
| ) | | |
| WHIRLPOOL CORPORATION, ) | | |
| Defendant. ) | | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Billy Sandefur, filed a Complaint on July 19, 2004, alleging that his former employer, Whirlpool Corporation, violated 42 U.S.C. § 1981 on the basis of his race, African-American, because it: (1) terminated him for sleeping on the job, when in fact, he should have been given the opportunity to return to an hourly position; (2) denied him opportunities for promotion; and (3) denied him assignments and working conditions equal to those provided to white employees.

Defendant now moves for summary judgment on Plaintiff's Complaint. For the reasons explained below, Defendant's motion is **GRANTED**.

**I.      Background**

Plaintiff commenced employment at Whirlpool in 1970. (Deposition of Billy Sandefur ("Sandefur Dep." at 28). In December of 1977, Whirlpool permanently hired Plaintiff as a supervisor. (*Id*. at 29-30). Prior to his termination, Plaintiff supervised the Pre-Foam Component Hookup High Side portion of the Operations Assembly business

1

unit. (*See* Deposition of Fred Dennison ("Dennison Dep.") at 10, 16-17).

In his position as a supervisor, Plaintiff received performance evaluations on an annual basis.  On his 1999 Performance Management Process ("PMP") evaluation, Plaintiff received a "below expectations" rating.  (Plaintiff's Ex. 2).  In particular, Plaintiff received a "below expectations" rating because he: (1) did not conduct the monthly department housekeeping/safety audits; (2) only attached two bi-monthly focus team meetings during the year; and (3) failed to correctly maintain his attendance and time records.  (Sandefur Dep. at 73, 76, 104; Sandefur Dep. Exs. 4, 5). On his 2000 PMP, Plaintiff received a "meets expectations" rating.  (*Id*. at 158).  The review noted that Plaintiff's performance had improved because he became more involved in department activities and improved in maintaining employee attendance and pay records.  (*Id*. at 162-63).

In 2001, Plaintiff took a leave of absence for sleep apnea.  (*Id*. at 171).  Plaintiff returned to work in August 2001 with no restrictions.  (*Id*.).

Upon his return, Mark Hodge[1], Plaintiff's supervisor, and Hodge's supervisor, Fred Dennison,[2] informed Plaintiff that his work performance needed to improve and that sleeping on the job would not be tolerated.  (Declaration of Mark Hodge ("Hodge Dec.") ¶ 7; Sandefur Dep. at 172).

---

[1] Specifically, Hodge, along with Jerry Judd, were Lead Advisors in the Operations Assembly business unit.

[2] Dennison was Plaintiff's direct supervisor from 1997-2000.  (Dennison Dep. at 9).

On September 21, 2001, Hodge counseled Plaintiff regarding his tardiness, work habits and failure to keep his payroll records up to date. (Sandefur Dep. Ex. 11; Hodge Dec. ¶ 8). During the meeting, Hodge set out standards he felt Plaintiff needed to meet. (Sandefur Dep. at 180; Sandefur Dep. Ex. 11). However, Plaintiff failed to make these improvements. In particular, Plaintiff had failed to pay his whole department overtime on two separate occasions. (Hodge Dec. ¶ 9). Consequently, on October 25, 2001, Hodge and Debby Castrale, Manager of Human Resources and Employee Relations, placed Plaintiff on probation until December 10, 2001. (Sandefur Dep. at 179-80; Sandefur Dep. Ex. 11; Hodge Dec. ¶ 10).

Ultimately, because Plaintiff's performance had not improved, Hodge rated Plaintiff's 2001 PMP as "below expectations." (Sandefur Dep. at 189; Sandefur Dep. Ex. 12). Hodge again explained the several areas in which he believed Plaintiff's performance was unsatisfactory. (Sandefur Dep. at 189; Sandefur Dep. Ex. 12).

Plaintiff's work performance did not improve. Hodge offered Plaintiff his assistance to provide training, guidance or coaching in whatever areas Plaintiff needed. (Sandefur Dep. Ex. 13). In addition, in March 2002, Castrale counseled Plaintiff regarding his failure to properly record the Family and Medical Leave absences of his hourly employees. (Sandefur Dep. at 195).

Furthermore, Plaintiff continued to sleep on the job. (*Id*. at 170, 172, 222; Deposition of Debby Castrale ("Castrale Dep.") at 27). In addition, Hodge received complaints from hourly employees that Plaintiff was sleeping at his desk. (Hodge Dec. ¶

12).

On June 19, 2002, in response to Plaintiff's incidents of sleeping on the job, alleged threats against Dennison and poor performance, Defendant issued Plaintiff a Letter of Understanding and placed him on probation until July 31, 2002. (Sandefur Dep. at 213-14; Sandefur Dep. Exs. 13, 14). During the meeting, Hodge and Castrale counseled Plaintiff regarding his overall performance. (Sandefur Dep. at 221; Sandefur Dep. Exs. 13, 14). In addition, Hodge and Castrale communicated to Plaintiff that disrespectful and threatening comments about Dennison[3] and further episodes of sleeping on the job would not be tolerated. (Sandefur Dep. at 221-22; Sandefur Dep. Exs. 13, 14).

On July 22, 2002, Jerry Judd, *see* note 1, found Plaintiff asleep at his desk. (Sandefur Dep. at 234). Judd contacted Hodge and notified him of the situation. (Hodge Dec. ¶ 15). Judd met Hodge and together they walked to Plaintiff's desk. When they arrived approximately 4 minutes later, Plaintiff was still asleep. (Hodge Dec. ¶ 17; Castrale Dep. at 15). Hodge woke Plaintiff up and told him he could not tolerate Plaintiff sleeping at his desk. (Hodge Dec. ¶ 18).

Thereafter, Hodge recommended to Castrale that Plaintiff be terminated for

---

[3] The genesis for reprimand regarding Dennison is the following incident: On June 12, 2002, Plaintiff entered the office of Joe West, Supervisor of Employee Relations in the Human Resources Department. (Sandefur Dep. at 209; Deposition of Joe West at 19). While in West's office, Plaintiff allegedly stated, "when we retire, I'll probably have to go out there and smack [Dennison] up beside the head to get his attention." (Sandefur Dep. at 210). West believed that Plaintiff had threatened Dennison. (West Dep. at 19). West therefore alerted Castrale of the comment. (*Id.*).

sleeping on the job. (Hodge Dec. ¶ 20).

On July 25, 2002, Castrale and Hodge met with Plaintiff and informed him that he was terminated for sleeping on the job. (Sandefur Dep. at 243-45; Declaration of Debby Castrale ¶ 12; Hodge Dec. ¶ 22).

**II.     Discussion**

Plaintiff opposes summary judgment only with respect to his discriminatory discharge and failure to promote claims. Accordingly, all other claims raised in his Complaint are deemed dismissed.

### A.     Discriminatory Discharge

A plaintiff can show that he was a victim of unlawful discrimination either by providing direct evidence or by proceeding under the indirect, burden-shifting method. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004). Under the direct method, the plaintiff may show, either through direct or circumstantial evidence, that the employer's decision to take the adverse job action was motivated by an impermissible purpose such as race. *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). The indirect, burden-shifting approach requires a plaintiff to first establish a prima facie case of discrimination. *Herron*, 325 F.3d at 299. To establish a prima facie case of race discrimination, a plaintiff must show that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) his employer took an adverse employment action against him; and (4) his employer treated similarly situated employees outside the protected class more favorably. *Id.*

5

In this case, Plaintiff relies on direct evidence in opposing summary judgment on his discriminatory discharge claim. Direct evidence "requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (quoting *Radue v. Kimberley-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000)).

The direct evidence Plaintiff cites is this statement: "the racial stereotyping of behavior for which Defendant admits it fired Plaintiff is that of 'lazy black.'" (Plaintiff's Brief at 15). The basis for this statement is not quite clear, but it appears to the court that Plaintiff seeks to create an issue of fact based upon the allegedly poor relationship Plaintiff had with Dennison. In his papers, Plaintiff alleges that Dennison is "racist," that he "picked on him," failed to give Plaintiff the information he gave to white supervisors, etc. (Sandefur Dep. at 81, 83-84, 87-88, 90-93, 130-31). Plaintiff's direct evidence must fail, however, because Plaintiff has no direct evidence of discrimination. Plaintiff's subjective conclusions are immaterial and irrelevant. Most importantly, Dennison did not make the decision to discharge Plaintiff. That decision was made by Hodge and Castrale.

Regardless, the fact that Plaintiff suffered from sleep apnea is of no moment, as Plaintiff's doctor released him to return to work without restrictions. If his sleep apnea were a hindrance to his job performance, Plaintiff could have, and should have, brought the issue to the attention of Hodge. As the record stands, there is no evidence that his sleeping on the job was in any way linked to his sleep apnea.

Finally, Plaintiff contends that in lieu of discharging him, Defendant should have

returned him to an hourly position. Plaintiff contends that similarly situated supervisors were demoted for performance problems rather than terminated. However, Plaintiff has proffered no evidence to show that these employees had similar performance problems, including a history of sleeping on the job.

Accordingly, and for all of the reasons stated in Defendant's briefs, Plaintiff's discriminatory discharge claim must be dismissed.

### B.     Failure to Promote

In order to establish a failure to promote claim, a plaintiff must show: (1) he is a member of the protected class; (2) he was qualified for the position sought; (3) he was rejected from the position; and (4) the employee selected was not a member of a protected group and was not better qualified than the plaintiff. *See Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003).

In the Argument Section of his brief, Plaintiff contends that he sought promotions between 2000 and 2001. Plaintiff fails to mention what promotion he applied for or felt he should have obtained. Similarly, Plaintiff fails to mention what opportunities for promotions he believed he should have obtained. Since he mentions that he was more experienced than Hodge and Judd, the court presumes he sought the promotion to Lead Advisor.

Judd was promoted to Lead Advisor in 2001. There is no evidence, however, that Plaintiff applied for the Lead Advisor position. To the extent Plaintiff is claiming he wanted to apply for the Lead Advisor position filled by Hodges in 1995, it is time-barred.

Notwithstanding, Plaintiff has failed to demonstrate any evidence, beyond mere conjecture, that he had more experience than Hodge or Judd. Plaintiff's failure to promote claim is therefore dismissed.

### III. Conclusion

Because Plaintiff failed to raise a genuine issue of material fact as to any of the claims raised in his Complaint, Defendant's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED** this ___14th___ day of March 2006.

                                                RICHARD L. YOUNG, JUDGE
                                                United States District Court
                                                Southern District of Indiana

Electronic Copies to:

Kevin Scott Kinkade
O'LEARY AND ASSOCIATES
oleary@gibsoncounty.net

Marissa Ross
LITTLER MENDELSON, P.C.
maross@littler.com

Virginia M. O'Leary
O'LEARY & ASSOCIATES
oleary@gibsoncounty.net

Garrison L. Phillips
LITTLER MENDELSON, P.C.
gphillips@littler.com